UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JAMES R. PARENT, JR, ET AL                     CIVIL ACTION

VERSUS                                          NUMBER 07-446-FJP-DLD

MURPHY EXPLORATION &
PRODUCTION COMPANY - USA, ET AL

## REPORT AND RECOMMENDATION

This matter is before the court on plaintiffs' Motion to Remand (rec. doc. 3). The motion is opposed.

***Background and Argument of Parties***

The plaintiffs, James R. Parent, Jr. and his wife, Brenda Parent, filed suit in Louisiana state court, alleging that plaintiff James R. Parent, Jr., was "a seaman in the employ and permanent crew member with defendants" Murphy Exploration and Production Company – USA, Murphy Exploration and Productions Company, and Murphy Oil USA, Inc. (Murphy), when he suffered personal injuries.[1] The plaintiffs alleged that the vessel was operated on "the navigable waters of the United States of America,"in furtherance of the mission of said vessel, plaintiff, JAMES R. PARENT, JR*.,* was diagnosed with clear cell carcinoma of the kidney which is alleged to have been caused by his routine exposure to Benzine during the twelve years which he was so employed, thus causing the injuries and damages sued on herein.[2]   The petition also alleged that the defendants "were the

---

[1] *Notice of Removal* (rec. doc. 1), "Petition for Damages," ¶3.

[2] *Notice of Removal* (rec. doc. 1), "Petition for Damages," ¶4.

1

owners, managers, operators and/or were in control of the a [sic] vessel in navigation."[3] The plaintiffs specifically stated that they were asserting a claim under the "Merchant Marine Act, approved June 5, 1920, and therein §33, commonly known as the Jones Act (46 U.S.C.A. § 688, et seq.) which act is applicable hereto."[4]

The defendants removed the matter to federal court, arguing that the court had diversity jurisdiction pursuant to 28 U.S.C. §1332, because the "plaintiffs' claim of Jones Act status with regard to James R. Parent, Jr., is a fraudulent claim and should be disregarded by this Court as this plaintiff only worked on production structures on the Outer Continental Shelf that would not legally be considered 'vessels' for the purpose of the Jones Act and general maritime law during his tenure of employment...."[5]  Therefore, Murphy Oil argued, the plaintiffs' claims "are exclusively governed by the Outer Continental Shelf Lands Act, 42 U.S.C. §1333, et seq."[6]  The defendants also argued in the *Notice of Removal* that the non-diverse co-employee defendants of Parent were fraudulently joined, as the claims against them were "all barred by the provisions of the 33 U.S.C. §933(i) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §901 *et seq.* made applicable by the Outer Continental Shelf Lands Act, *supra*, which precludes any claim for negligence or wrongdoing on the part of any other person in the same employ."[7]

The plaintiffs timely filed their motion to remand, attaching an affidavit of James R.

---

[3]*Notice of Removal* (rec. doc. 1), "Petition for Damages," ¶5.

[4]*Notice of Removal* (rec. doc. 1), "Petition for Damages," ¶6.

[5]*Notice of Removal* (rec. doc. 1), p. 3.

[6]*Notice of Removal* (rec. doc. 1), p. 3.

[7]*Notice of Removal* (rec. doc. 1), p. 3.

Parent, Jr., wherein he attested, *inter alia*, that he "remained aboard the vessel" during his work duties and that he "considered myself a member of the crew of the chartered vessels and spent the majority of my time working aboard them."[8]

Defendants opposed the motion to remand, arguing that the Supreme Court, in *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995), established a two part test for seaman status, which the plaintiff does not meet:

> First. . . . an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission. . . .Second. . . .a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature.[9]

The defendants argue that the plaintiff has the burden of proof as to his seaman status, and that "when undisputed facts reveal that a maritime worker only has a 'temporal connection' to vessels in navigation" the courts resolve the issue against seaman status.

In this matter, defendants argue that Parent's duties did not contribute to the function of any vessel or to the accomplishment of its mission, as Parent's statements made in his affidavit regarding his job responsibilities onboard vessels were either incomplete or untrue. The defendants argue that while Parent occasionally did some work aboard vessels, those duties were incidental to his primary duties on fixed platforms. In his affidavit, Danny Johnson, of Murphy Oil, stated that in the S. Pelto field, all Murphy employees were assigned to platforms permanently attached to the seabed on the Outer Continental Shelf, and no employee was assigned to work aboard a vessel on a permanent basis. Johnson also declared that while certain employees were sent to satellite platforms in the field, those

---

[8] *Motion to Remand* (rec. doc. 3), "Affidavit," ¶¶9, 11.

[9] *Motion to Remand* (rec. doc. 3), p. 9.

satellite platforms were also permanently attached to the sea bed.

Defendants futher argue that even if the majority of plaintiff's duties were performed on vessels, he would not be able to recover under the Jones Act, because he did not have the requisite connection to "an identifiable fleet of vessels" to support a Jones Act claim. That is, plaintiff was not assigned to "an identifiable fleet of vessels," as required by jurisprudence, because Murphy Oil did not own or control the vessels, but instead time chartered them. Johnson declared that Murphy time-chartered the vessels from more than four different boat companies, and directed the destination and timing of the voyage and the employees and equipment that would be carried aboard for each voyage. Johnson further attested that "Murphy did not assign anyone to act as a crewmember of any of the vessels it chartered; Murphy employees never piloted any of the boats; the vessel owners were responsible for the manning and operation of the vessels; and, Murphy had no other control over the service vessels in question."[10]

The defendants also complain that the plaintiffs failed to answer an interrogatory, served on them after removal. A motion to compel an answer to this interrogatory is pending, filed in November, 2007. The interrogatory in question is as follows:

> Paragraph 4 of the Petition for Damages alleges that James R. Parent, Jr. was "a member of the crew of a vessel owned and operated by Murphy Oil on the navigable waters of the United States of America." Please identify with particularity all facts supporting said allegation, including but not limited to the following:
> (a)   the name of any vessels to which Mr. Parent was assigned throughout his employment with any named Defendant;
> (b)   the dates of any such assignment to each of these vessels;
> (c)   Mr. Parent's position and duties while working aboard each of these vessels;

---

[10] "Affidavit of Danny Johnson," ¶ 9, Exhibit 2, *Memorandum in Opposition to Plaintiffs' Motion to Remand* (rec. doc. 11).

    and

(d) any facts supporting an allegation that Mr. Parent was exposed to benzene while working aboard each of these vessels.[11]

The plaintiffs filed a reply memorandum, which included another affidavit of Parent. In their reply, the plaintiffs argue that the "case is replete with unresolved factual questions" which "must be resolved in the plaintiffs' favor...."[12] In his affidavit, Parent stated that his last position with Murphy Oil was as a production operator, that he spent the majority of his work time on vessels, not on production platforms, and that he was assigned to one vessel at a time, although over the years these vessels changed. Plaintiff further stated that he spent approximately 90% of his work time on the vessel, and 10% of his work time on the wellhead platforms, that he would assist the deckhands on the vessel, ate with the rest of the crew on the vessel, and considered himself a part of the crew of the vessel. Parent stated that he watched the wheelhouse and even piloted the vessel for the captain when necessary.[13] Parent identified four vessels that he was assigned to over the years: The M/V Stepandt, the M/V Taurus, the M/V Jarco, and the L/B Timmy Danos.

In regard to the issue of attachment to an identifiable vessel or fleet of vessels, plaintiffs argue that both the Louisiana Supreme Court and the Fifth Circuit have held that "determination of seaman status should not be controlled by an employer's chartering

---

[11] *Motion to Compel* (rec. doc. 27), Exhibit A.

[12] *Reply Memorandum to Defendant's Opposition to Motion to Remand* (rec. doc. 19), p. 1.

[13] *Reply Memorandum to Defendant's Opposition to Motion to Remand* (rec. doc. 19); see "Affidavit of James R. Parent, Jr.," (Exhibit A).

arrangement."[14]  Instead, plaintiffs argue, "the key factor in determining 'seaman' status under the Jones Act is its employment-related connection to a vessel in navigation, [and] that it is **not** necessary for the employer to own the vessel, nor a fleet of vessels, for the employee to qualify for 'seaman' status under the Jones Act."[15]

Defendants filed a surreply, which included another "Declaration of Danny Johnson," and the December, 2003, daily logs of the M/V Stepandt.  The defendants argue that Parent's affidavit was conclusory, as it failed to specify the "type of work and the parameters of each assigned task . . . the duration of each alleged task completed aboard the vessels . . .the percentage of work time he spent performing these tasks, the amount of time he was just being transported from site to site by the service vessels, and the amount of time he actually spent on the wellhead platform."[16]

In the attached "Declaration of Danny Johnson,"Johnson declared that "[p]latforms 12A and 10B were the main production platforms where the production hands and fieldmen resided and ate most, if not all of their meals;" that the vessels were timechartered by Murphy, and were not specially equipped to maintain the wellhead and wellhead platforms, and that the "logs of the M/V STEPDANT which was assigned to the South Pelto field in December 2003 are attached hereto and indicate the work performed by the STEPDANT

---

[14] *Reply Memorandum to Defendant's Opposition to Motion to Remand* (rec. doc. 19), citing *Wisner v. Professional Divers of New Orleans*, 731 So.2d 200 (La. 1999), citing *Bertrand v. International Mooring & Marine, Inc.*, 700 F.2d 240 (5th Cir. 1983).

[15] *Reply Memorandum to Defendant's Opposition to Motion to Remand* (rec. doc. 19), referencing *Patterson v. Weber Marine and Fireman's Fund Ins. Co.*, 635 So.2d 686 (La.App. 1 Cir. 1994)(Emphasis added).

[16] *Surreply on Behalf of Defendants to Plaintiffs' Reply to Defendants' Opposition to Motion to Remand* (rec. doc. 22), p. 2, 3.

at material times shown on the logs."[17]  The logs are prepared on forms with the heading "Murphy Exploration & Production Company, P.O. Box 61780, New Orleans, Louisiana 70161" and are entitled "Daily Log."[18]

As the final word, plaintiffs filed a reply to defendants' surreply, wherein the plaintiffs argue that the decision of Parent's status as a seaman on this motion to remand is inappropriate, as the factual disputes are "numerous and evident."[19]  The plaintiffs point to disputes about the amount of time spent on the vessels, whether Parent assisted with ship duties, even whether he ate lunch on the vessel or not.  The plaintiffs also explain that they have not responded to the interrogatory submitted by the defendant because such a response  "can be viewed as a waiver to a right to remand."[20]

### *Applicable Law and Discussion*

Law of Removal

The removing party bears the burden of establishing the existence of federal jurisdiction over a state court suit.  See, *e.g., Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 397 (5th Cir. 1998).  Furthermore, it is axiomatic that the lower federal courts are  courts of limited jurisdiction and may exercise only the jurisdiction that has been conferred by Congress*.  E.g., Trizec Properties, Inc. v. U. S. Mineral Products Co.*, 974

---

[17] *Surreply on Behalf of Defendants to Plaintiffs' Reply to Defendants' Opposition to Motion to Remand* (rec. doc. 22), Exhibit 1, "Declaration of Danny Johnson."

[18] *Surreply on Behalf of Defendants to Plaintiffs' Reply to Defendants' Opposition to Motion to Remand* (rec. doc. 22), Exhibit 1, Daily Logs of M/V Stepandt.

[19] *Plaintiffs' Reply Memorandum to Defendants' Surreply* (rec. doc. 26).

[20] *Plaintiffs' Reply Memorandum to Defendants' Surreply* (rec. doc. 26), FN1, citing *Harris v. Edward Hyman Co.*, 664 F.2d 943 (5th Cir. 1981); *Courville v. Texaco, Inc.*, 741 F.Supp. 108 (E.D.La. 1990).

F.2d 602, 604 (5th Cir. 1992). Accordingly, there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing the action to federal court, and there is no time limit for filing a motion to remand on the basis of lack of subject matter jurisdiction. *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).

On the other hand, a motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal. A "procedural defect" is defined as any impropriety in the removal that would not deprive the district court of jurisdiction over the subject matter if the action had been filed as an original action in federal court. In other words, if this court would have had jurisdiction over the action had it been filed originally in federal court, any other irregularities in the removal constitute only procedural defects that are waived if not raised by a party within 30 days of removal. See, *e.g., Albarado v. Southern Pacific Transp. Co.*, 199 F.3d 762, 765-66 (5th Cir. 1999); 28 U.S.C. § 1447(c).

Removal of Jones Act Cases

While Jones Act cases are generally not removable, a defendant may remove a petition that fraudulently asserts such a claim, and may pierce the pleadings to show same. *Fields v. Pool Offshore, Inc.*, 182 F.3d 353, 356 (5th Cir. 1999). The burden of proving that the allegations were fraudulently or improperly made is on the defendant, and all disputed issues are resolved in the plaintiff's favor. *Yawn v. Southern Ry. Co.*, 591 F.2d 312, 316 (5th Cir. 1979). The Fifth Circuit allows district courts to utilize a summary judgment like proceeding to determine whether the claims were fraudulently pled. *Burchett v. Cargill*, 48 F.3d 173, 176 (5th Cir. 1995). The Fifth Circuit in *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004), recently clarified the burden and process of weighing and

examining claims of improper or fraudulent joinder of parties under a Rule 12(b)(6) type analysis, and the court can see no reason not to apply that analysis to an assertion of fraudulent joinder of claims.[21] In *Smallwood*, the court stated as follows:

> ...we explained in *Travis v. Irby* 326 F.3d 644, 646-47 (5th Cir. 2003 )], that the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in- state defendant.

In *Smallwood*, the Fifth Circuit stated that "[o]rdinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood*, 385 F.3d at 573. Rule 12(b)(6) authorizes a dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007)." In some few cases, where a plaintiff has omitted or misstated "discrete facts that would determine the propriety of joinder" the district court may pierce the pleadings and conduct a summary inquiry. *Smallwood,* 385 F.3d at 573, citing *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 389, n.10, (5th Cir. 2000). However, the *Smallwood* court admonished district courts not to conduct substantial hearings into the merits, "as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances

---

[21]See *Highland Crusader Offshore Partners, L.P. v. Motient Corporation*, 2006 WL 3358425 (W.D.Tex.2006).

of the claim" as "[i]ndeed, the inability of make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Smallwood*, 385 F.3d at 574.

The removing party thus bears a heavy burden of demonstrating improper joinder. See, e.g., *Sid Richardson Carbon & Gasoline Co.* at 751-52; *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir. 1990). The burden of persuasion on a party claiming improper joinder "is a heavy one." *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003).

The defendant has not satisfied its burden of demonstrating that Parent's Jones Act claim was fraudulent or improper. The court is unable to conclude, after resolving all disputed facts in favor of the plaintiff, that the plaintiff has no claim as a seaman under the Jones' Act. The plaintiffs clearly alleged facts sufficient to assert a claim under the Jones Act in their petition, and upon challenge, Parent has submitted multiple affidavits wherein he attests that he was assigned to one or more vessels, that most of his work time was spent on board those vessels, that he assisted in job duties aboard the vessels, (even piloting the vessel on occasion), in addition to well-head maintenance aboard the satellite platforms. While the defendants have submitted opposing affidavits, all disputed facts and ambiguities must be resolved in the plaintiffs' favor when determining whether the plaintiff has no reasonable possibility of establishing a Jones Act claim. *See Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 345 (5th Cir. 1999). To resolve these conflicting affidavits (the parties cannot even agree on Mr. Parent's job title)[22], the court would have to make

---

[22]In the "Affidavit of Denise O'Connor," Ms. O'Connor states that Mr. Parent was never classified by Murphy as a Production Operator, but was classified as a Gauger B, while Parent states that he was a Production Operator.

credibility judgments regarding multiple factual disputes, which would be improper. As instructed by the Fifth Circuit in *Smallwood*, 385 F.3d at 574 , "the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden."

Finally, an order compelling an answer to the outstanding interrogatory prior to ruling on the motion to remand would not be helpful. The plaintiffs have already in memoranda named the vessels Parent alleges he was assigned to, and the exact dates of those assignments, even if relevant, should already be in the defendants' possession. Likewise, Parent has already described his duties on those vessels, and explained his alleged exposure to benzene, throughout his affidavits and memoranda. In sum, the information sought by this discovery has already been provided.

*Recommendation*

For the reasons given above,

**IT IS THE RECOMMENDATION** of the court that the plaintiffs' Motion to Remand (rec. doc. 3) be **GRANTED** and this matter be **REMANDED** to the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.

Signed in Baton Rouge, Louisiana, on December 14, 2007.

**MAGISTRATE JUDGE DOCIA L. DALBY**